[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This appeal arises from the denial by the Town of Brookfield's Inland Wetlands Commission (commission) of the plaintiff's request for a permit to conduct regulated activities in and around wetlands. The proposed activities concerned construction of a driveway, with a crossing of approximately 166 feet of wetlands, to service a residence to be constructed on the property. The proposed activity would have resulted in the disturbance of .11 acres of wetland on the 5.029 acre building lot. The property is located in a one acre residential building zone. The plaintiff's application was filed on February 2, 2000, and hearings held on April 10, April 24, May 8, May 22, June 12, June 26, July 10 and July 24, 2000.
The proposed location for the house was in an area of well drained upland soils. There was no need for a septic system as sanitary sewers were available for the home. The only direct encroachment of the wetland proposed was to be a driveway crossing. The proposal included a culvert to allow the water to flow through the wetland.
Comments from the commissioners revealed no specifics as to harm or adverse impact to the wetlands which would result from the proposed activity, but rather indicated a belief that they were required to deny the application because of prior decisions on other properties with shorter driveway proposals.[1]
In its meeting of July 24, 2000, the Commission turned down the CT Page 10837 application.
Notice of the decision was published in the Danbury News-Times on July 30, 2000, and this appeal followed.
 AGGRIEVEMENT
General Statutes § 22a-43 governs wetlands appeals. It provides that: "[A]ny person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive . . . may, within the time specified in subsection (b) of section 8-8 . . . appeal to the superior court for the judicial district where the land affected is located . . ." The evidence establishes that the plaintiff was the owner of the subject property and is aggrieved.
 STANDARD OF REVIEW
The legislature has found that "[t]he inland wetlands and watercourses of the State of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed," and that "[t]he preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state." General Statutes § 22a-36. Designated wetlands agencies of each municipality are expressly authorized to promulgate regulations that "are necessary to protect the wetlands and watercourses within its territorial limits." General Statutes § 22a-42 (c).
"The purpose of the Inland Wetlands and Watercourses Act (act) is to provide an orderly process in which the rights of landowners to use or develop their land can be balanced with a need to protect the invaluable public resource of wetlands. See General Statutes § 22a-36. The statute, and the regulations adopted to implement it, provide for an application and hearing process through which the competing interests are balanced. See General Statutes § 22a-42a." Woodburn v. ConservationCommission, 37 Conn. App. 166, 170, 655 A.2d 764, cert. denied,233 Conn. 906, 657 A.2d (1995).
"General Statutes § 22a-42, `Municipal Regulation of Wetlands and Watercourses,' sets forth the functions and responsibilities of municipal inland wetland agencies. The jurisdiction "of an inland wetlands agency is extremely limited in that it can consider only matters that impact on designated wetlands areas.' Tanner v. Conservation Commission,15 Conn. App. 336, 339, 544 A.2d 258 (1998). The commission, in reviewing CT Page 10838 permit applications acts in an administrative capacity and the trial court, on appeal, determines, on the basis of the record, whether substantial, reliable evidence exists to reasonably support the commission's decision. Strong v. Conservation Commission,28 Conn. App. 435, 440, 611 A.2d 427, cert. granted, 224 Conn. 902,615 A.2d 1046 (1992), appeal dismissed, 226 Conn. 227, 627 A.2d 431
(1993).
"The plaintiff bears the burden of proving that the commission acted improperly. Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995); and, further, `must establish that substantial evidence does not exist in the record as a whole to support the agency's decision.' Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587,628 A.2d 1286 (1993)." Avalon Bay Communities, Inc. v. Orange, Superior Court, judicial district of New Britain at New Britain, Docket No. 492660 (August 13, 1999, Munro, J.).
The trial court reviews the record to determine whether the commission "acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198,206, 658 A.2d 559 (1995). "In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reasons must be substantial. . . ." (Internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, 226 Conn. 579,587-588, 628 A.2d 1286 (1993). Evidence in the record will prove "sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Id., 588. "The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Brackets in original; internal quotation marks omitted.) Id.
"The plaintiff shoulders the burden of proof when challenging a decision of an administrative agency. Newtown v. Keeney, 234 Conn. 312,319, 661 A.2d 589 (1995); Samperi v. Inland Wetlands Agency, 226 Conn. 579,587-88, 628 A.2d 1286 (1993); Red Hill Coalition, Inc. v. ConservationCommission, 212 Conn. 710, 718, 563 A.2d 1339 (1989). A showing by the plaintiff that another decision maker might have reached a different conclusion does not satisfy this burden. Newtown v. Keeney, supra, 319;DeBeradinis v. Zoning Commission, 228 Conn. 187, 198, 635 A.2d 1220
(1994). Instead, the plaintiff must establish that substantial evidence does not exist in the record to support the agency's decision. SamperiCT Page 10839v. Inland Wetlands Agency, supra, 587; Feinson v. ConservationCommission, 180 Conn. 421, 425, 429 A.2d 910 (1980). Should substantial evidence exist in the record to support any basis or stated reason for the agency's decision, the court must sustain the decision. DeBeradinisv. Zoning Commission, supra, 199; Primerica v. Planning ZoningCommission, 211 Conn. 85, 96, 558 A.2d 646 (1989). The reviewing court may grant relief from the agency's decision only where the decision is arbitrary, illegal or not reasonably supported by the evidence. Red HillCoalition, Inc. v. Conservation Commission, supra, 718."
"This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action . . . (Brackets in original, citations omitted; internal quotation marks omitted.) Newtown v. Keeney, supra, 234 Conn. 319-20." Keiser v.Conservation Commission, 41 Conn. App. 39, 41-42, 674 A.2d 439 (1996)
"The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Internal quotation marks omitted.) Dumont v. Commissioner of Motor Vehicles,48 Conn. App. 635, 640, 712 A.2d 427, cert. denied, 245 Conn. 917,717 A.2d 234 (1998). While the commission is not required to believe any of the witnesses, including expert witnesses. . . . it must not disregard the only expert evidence available. (Citation omitted.) Tanner v.Conservation Commission, supra, 15 Conn. App. 336, 341; Strong v. Conservation Commission, supra, 28 Conn. App. 435, 441 ("an agency cannot capriciously ignore the testimony of expert witnesses.'). Moreover, when deciding matters involving technically complex issues, e.g., pollution control, the board must base its decision upon reliable, probative evidence, typically expert, for the nature and probability of any potential adverse impact on the wetlands. Feinson v. ConservationCommission, supra, 180 Conn. 421, 429, 429 A.2d 910 (1980)." Avalon BayCommunities, Inc. v. Orange, Superior Court, judicial district of New Britain at New Britain, Docket No. 492660 (August 13, 1999, Munro, J.).
"The agency . . . cannot completely disregard the documentary evidence before it. The agency cannot disregard the only expert evidence on an issue before it when agency members lack their own expertise or knowledge on it. . . . Agency members can rely on their own personal knowledge on matters readily within their competence, but cannot do so where the issueis a matter which requires expert testimony; if the agency members rely CT Page 10840 on their special knowledge and experience in disregard of contrary expert testimony, they must give notice of the material facts critical to thedecision so that any person adversely effected by it can be given an opportunity for rebuttal." (Emphasis added.) R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999), § 33.9, pp. 182-83.
"Judicial review of an administrative agency decision requires a court to determine whether this is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) Altschul v. Salinas, 53 Conn. App. 391, 396, 730 A.2d 1121, cert. denied, 249 Conn. 931, 761 A.2d 751 (1999). The court is "limited to determining whether the commission's conclusions of fact were unreasonable, arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) Sweetman v. State Elections EnforcementCommission, 249 Conn. 296, 332, 732 A.2d 144 (1999).
 SUBSTANTIAL EVIDENCE
The Plaintiff claims that the commission acted arbitrarily, illegally and/or abused its discretion in denying its application because the reasons stated by the commission are not supported by the record, because it denied its application when the applicant's evidence showed that there was no "prudent or feasible alternatives," suggested an illegal alternative, i.e., requiring the applicant to purchase additional land or an easement over another's land, and rejected the applicant's expert evidence as to the lack of impact of the proposal without any evidence to the contrary, and without stating any facts to contradict the opinion, or basis for the opinion of the expert.
When an inland wetlands agency denies any permit for a regulated activity, it is required to state upon the record the reasons for its decision. General Statutes § 22a-42a (d). In determining the agency's reasons, the views of individual members are not to be considered on review but "only the reasons in the agency's final collective decision" control. R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 33.9, p. 178. If none of these reasons are supported by substantial evidence, then the agency's denial will be overturned. Id., pp. 178-79.
In the instant case, although the text of the motion for disapproval fails to specify reasons for the action, comments immediately preceding the introduction of the motion and vote clearly indicate unanimous agreement on the following four reasons (R.O.R. MM):[2]
CT Page 10841 1. Per section 220-11B1 of the regulations: The construction of a driveway and installation of a sewer line both crossing 160' of wetlands will create a significant disturbance in the wetlands area. Although the applicant proposes to install a number of culverts, the length of the disturbance in the wetlands area is significant that such culverts will not be sufficient to mitigate the adverse impact on wetlands:
 2. Per section 220-11B4 of the regulations: The wetlands area will be irreversibly destroyed by the deposition and filling of material to construct the driveway access.
 3. Per section 220-11B5 of the regulations: The proposed activity will result in a significant activity as described in 220-3A29 of the IWC regulations.
 4. Per section 220-11B6 of the regulations: The proposed driveway and house may not be suitable due to the configuration of the site and existence of significant wetlands on the site. While the applicant was instructed to seek other alternative accessway to the building site, there was no written evidence on record that this was prudently pursued.
With respect to these reasons, "the court employs a deferential standard of review, [but] it does not rubber-stamp an agency's decision. There must exist some basis in fact to support a commission's implicit calculus that the probability of harm and/or the severity of risk to the wetlands warrants its denial of an applicant's permit." Avalon BayCommunities, Inc. v. Orange, Superior Court, judicial district of New Britain at New Britain, Docket No. 492660 (August 13, 1999, Munro, J.), citing Forsell v. Conservation Commission, 43 Conn. App. 239, 249,682 A.2d 595 (1996) ("We conclude that the commission's decision that the plaintiff's application proposed activities the impact of which on the existing . . . watercourses or wetlands was both likely and significant is not supported by substantial evidence.").
None of the reasons of the commission contain any specificity. They consist of general conclusory statements, in large part parroting the language of the regulations. They fail to disclose any particular facts from which one can conclude how, if, or in what way, the proposed activity will, or probably will, adversely affect the wetlands. The CT Page 10842 record lacks any expert testimony that any negative affect would result. As the courts have recognized: "Regulated activities, as defined by statute, do not create a per se significant adverse impact on wetlands. The commission must find, based on specific facts in the record, that the proposed regulated activities present an unreasonable, significant risk to the wetlands; moreover, whether, the proposed regulated activities create an adverse impact on the wetlands poses a technically complex question, one that requires that the commission rely on expert opinions and testimony if members of the commission lack their own expertise or knowledge. Tanner v. Conservation Commission, supra, 15 Conn. App. 336,341." Avalon Bay Communities, Inc. v. Orange, Superior Court, judicial district of New Britain at New Britain, Docket No. 492660 (August 12, 1999, Munro, J.).
As in Avalon Bay Communities, Inc., supra, the record in this case lacks evidence of such expertise of the commissioners and the commission has not argued that its members possessed the same.
For this commission's decision to be upheld, it is required to find, based on specific facts in the record, that the proposed regulated activities present an unreasonable, significant risk to the wetlands, but no such support for any reason asserted can be found.
On the other hand, the record did contain testimony and a report of a professional engineer, Michael J. Mazzucco (R.O.R. D) and a report of a soil scientist, Henry T. Moeller (R.O.R. C). This was the only evidence of expert witnesses.
The soil scientist report provided the results of his on-site investigation of the 5+ acre parcel and a conclusion of the lack of any adverse impact of the proposed development of the property as follows:
 The total lot area is approximately 5.1 acres. The only direct encroachment of the wetland will be the driveway crossing. The wetland consists of very stony soil developed in glacial till. Thus, the soils can easily support the fill and driveway crossing. Obviously, the crossing will require a culvert to allow the water to flow through the wetland. . . . The water levels will remain equal on both sides of the driveway or will reach equilibrium quickly after a storm. Due to the nearly level slopes the water tends to spread out over the very level areas of the wetland during a storm.
 The development of the upland area [with the CT Page 10843 proposed home] and the driveway itself will not have significant or measurable impact on the water levels or soil moisture regime in the wetland. The watershed area supporting the wetland is much larger than the property itself. The wetland area on the property is also quite large in relation to the area of upland soils on the property. Thus, any increase of runoff from the impervious surfaces of the roof and driveway will not even be measurable in the wetlands. Even the addition of the lawn area is not significant. Most likely a large percentage of the upland soils on the property will remain in forest vegetation. The wetlands themselves will also remain in forest vegetation.
 Except for the driveway crossing, the wetland soil area will remain the same in area minus the driveway, shape, functions, and vegetation. The watershed area remains the same. The driveway simply reduces the area of the wetland soils by only 3300 square feet. This reduction will not change the basic functions of the wetland as a drainage way and a sediment nutrient trap. Water will flow at the same rate and peak flows. Due to the nearly level slopes in different areas, it will also continue to provide some detention and water storage capacity. (R.O.R. C.)
Michael J. Mazzucco, a civil engineer, in addition to his comments to the commission, presented a report indicating that the only possible alternative for an entrance to the site would double the impact on the wetlands compared to the proposal before the commission. (R.O.R. D.)
Without any expert evidence contrary to these experts, if the commission determined to reject the opinion of these experts they were required to indicate that they were doing so based upon their own special knowledge or experience and provide the material facts critical to their decision. Tanner v. Conservation Commission, 15 Conn. App. 336, 341,544 A.2d 258 (1988). "While we recognize that an administrative agency is not required to believe any of the witnesses, including expert witnesses; Manor Development Corporation v. Conservation Commission,180 Conn. 692, 697, 433 A.2d 999 (1980); it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge." Id., 341. Ellenthal v. Inland WetlandsAgency, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 153011, (October 23, 1998, Comerford, J.); Branderv. Inland-Wetland Commission, Superior Court, judicial district of CT Page 10844 Litchfield at Litchfield, Docket No. 076356 (September 11, 1998,Pickett, J.).
"If an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceedings."Feinson v. Conservation Commission, 180 Conn. 421, 428-29, 429 A.2d 910
(1980).
The substantial evidence rule requires that an agency decision must be based on reliable evidence made public and that an applicant have an opportunity to respond to the agency's concerns. Here the record contains no evidence of a significant activity, i.e., an activity with a significant impact on the area. There is nothing in the record, no evidence, to support any of the commission's four reasons for denial. These four reasons represent conclusions without specific factual support in the record. In so doing, the commission acted illegally, arbitrarily and abused its discretion. "A mere possibility or potential for harm, without more, cannot provide an adequate basis to deny a wetlands permit application. `An activity that merely impacts or affects wetlands is not a significant activity; the effect must be major or the impact must be significant.' Keiser v. Conservation Commission, 41 Conn. App. 39, 44,674 A.2d 439 (1966); Rockville Fish Game Club v. Inland WetlandsCommission, 231 Conn. 451, 650 A.2d 545 (1994)." Avalon Bay Communities,Inc. v. Orange, Superior Court, judicial district of New Britain at New Britain, Docket No. 492660 (August 13, 1999, Munro, J.) Here, the record is without support for even the possibility of injury.
From the discussion of the commissioners, it appears that their decision was the result of a concern for the precedential value of their prior decisions on driveway applications concerning other properties. However, nothing in the record describes, compares, or contrasts the conditions of, or on, any of these parcels concerning wetlands, topography, soil conditions, or any other relevant factual considerations other than estimates as to some lengths of crossings. Nothing in the record relates or discusses the impact on the wetlands involved in any of these other applications, and there is no evidence here as to any negative impact of the current application. Without such information before the commission, the use of prior applications and decisions is not appropriate and cannot form the basis for the decision in this case. To do so would, in effect, constitute the adoption of an informal, imprecise, and ad hoc standard for the length of all crossover/driveways without hearings, without proposals, without review and without a resolution and vote, and such is not permitted by statute or regulation. CT Page 10845
Before an administrative agency can act on an application to conduct a regulated activity, regulations must be in place with known and fixed standards that apply to all similar cases. See Monroe v. MiddleburyConservation Commission, 187 Conn. 476, 484-85, 447 A.2d 1 (1982);Westport v. Norwalk, 167 Conn. 151, 157, 355 A.2d 25 (1974) ("Before a planning commission can exercise any control over the planning of a subdivision, regulations must be adopted for its guidance in passing on subdivisions plans, the council is to be controlled by the regulations which it has adopted."); Sowin Associates v. Planning and ZoningCommission, 23 Conn. App. 370, 376, 580 A.2d 91, cert. denied,216 Conn. 832, 583 A.2d 131 (1990) ("Subdivision regulations cannot be too general in their terms and must contain known and fixed standards that apply to all similar cases. . . . A commission's regulations must be reasonably precise in subject matter and reasonably adequate and sufficient to give both the commission and those affected by its decision notice of their rights and obligations." (Citations omitted.)
"To hold otherwise, to permit an administrative agency to develop an adhoc plan as a yardstick against which to measure any given proposal. isto substitute whimsy for sound judgment. RK Development Corporation v.Norwalk, 156 Conn. 369, 377, 242 A.2d 781 (1968). Giving an administrative agency such absolute power could deprive a landowner of his property, without due process of law. Id.; Helbig v. ZoningCommission, 185 Conn. 294, 310, 440 A.2d 940 (1981). Although due process is not intended to hold administrative agencies under a short leash, it is designed to restrain them from roaming at will over the adjudicative landscape. To avoid such constitutional problems, statutes sometimes specifically preclude an administrative agency from exercising its statutory powers until it adopts appropriate regulations to govern its doings." (Emphasis added.) Monroe v. Middlebury Conservation Commission, supra, 187 Conn. 484.
An owner is entitled to be able to ascertain, within a reasonable certainty, what uses may legally be made of his property. Town of Lebanonv. Woods, 153 Conn. 182, 191, 215 A.2d 112 (1965). Here, the commission's use of uncertain and imprecise standards as to the length of driveways, without regulations or written standards, based on prior decisions relating to other unspecified properties, necessarily of different characteristics relating to wetlands, soil composition, topography, etc., acted illegally, arbitrarily and abused its discretion.
Also, as suggested by comments of the commissioners and, as is indicated by reason number four, the commission insisted that the Plaintiff, to obtain approval of the application, either obtain title to, or an easement over, property of neighbors so as to provide an CT Page 10846 alternate accessway. The reason provided as follows: "4. Per section220-11B6 of the regulations: While the applicant was instructed to seek other alternative accessway to the building site, there was no written evidence on record that this was prudently pursued."[3]
The Plaintiff was entitled to have its application reviewed based upon the subject property and the conditions that existed at the time of the application. The commission has no authority to condition a wetland application approval on the applicant's willingness or ability to acquire property of others. "The law is established that the [c]ommission may impose reasonable conditions to its approval of the project whensatisfaction of the conditions appears probable. (Emphasis added.)Schwartz v. Planning Zoning Commission, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 144563 (May 16, 1996, Stevens, J.). (Finalization of previously attained easement was "reasonably attainable condition on the applicant's right to proceed with the project."). In the present case, there is no record support that the plaintiff's ability to obtain an alternate accessway by acquiring title to, or an easement over, the neighbor's property would have been a "reasonably attainable condition."
 CONCLUSION
The court concludes that the Inland Wetlands Commission acted without substantial evidence to refute the plaintiff's experts.
The court concludes that none of the commission's reasons for denial of the Plaintiff's application are supported by substantial evidence. Accordingly, the court sustains the Plaintiff's appeal and remands to the commission with the directive to issue the permit to conduct the regulated activity subject to and reasonable conditions as might pertain thereto.
Hiller, J.